UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES EARL BOYD,

                Petitioner,

                                        CASE NO. 5:09-CV-10575
v.                                  HONORABLE JOHN CORBETT O'MEARA

LLOYD RAPELJE,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS,
DENYING PENDING MOTIONS, DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.  INTRODUCTION**

      This is a habeas case brought pursuant to 28 U.S.C. § 2254.  On August 8, 2007, Michigan prisoner James Earl Boyd ("Petitioner") was convicted of one count of armed robbery, MICH. COMP. LAWS § 750.529, following a bench trial in the Kalamazoo County Circuit Court.  On September 17, 2007, he was sentenced as a fourth habitual offender to nine to thirty years imprisonment.  In his pleadings, Petitioner raises claims concerning the impartiality of the trial judge, his habitual offender sentencing enhancement, and the effectiveness of defense counsel.  For the reasons stated, the Court finds that Petitioner's claims lack merit and do not warrant habeas relief, that his pending motions are therefore moot, and that a certificate of appealability and leave to proceed *in forma pauperis* on appeal should be denied.

**II.  FACTS AND PROCEDURAL HISTORY**

      Petitioner's conviction arises from an armed robbery of a convenience store on December

23, 2006, in Kalamazoo County, Michigan.  Petitioner entered the convenience store with another man who began interacting with the store owner, Walter Fish.  Fish testified that the other man was acting very strangely.  A store clerk, Ronnie Krantz, who was in another part of the store pricing items, saw Petitioner reach behind a counter where the cartons of cigarettes were kept and take a carton of cigarettes, already having one tucked underneath his arm.  Petitioner began to the leave the store.  Krantz attempted to stop Petitioner, but Petitioner pushed him out of the way and left.

Krantz testified that he followed Petitioner out of the store.  Petitioner stopped and turned around to face him.  Petitioner yelled that he had a gun, reached into his coat pocket, pulled out an orange and yellow utility/box-cutter knife, and slashed at the clerk.  The blade on the knife was extended.  Krantz yelled that Petitioner had a knife, put his hands up in a defensive posture, and backed away.  Petitioner then turned, ran away, and got into a white Ford Explorer.

A postal employee, James Crump, was in the store at the time of the incident.  Crump testified that he saw the clerk chase Petitioner out of the store, that he followed them outside, that he saw Petitioner turn around, that he heard the clerk yell that Petitioner had a knife, and that he saw the clerk move into a defensive position.  Crump got into his postal vehicle and followed Petitioner for about six blocks, informing the police of the make, model, partial license plate, and location of the vehicle.

Police later spotted the vehicle parked in front of a residential property.  The first officer on scene approached the vehicle, saw Petitioner move from the back seat to the front seat of the car, and pulled him out of the vehicle.  The officer frisked Petitioner and found a utility knife in his jacket.  At first, Petitioner denied involvement in the robbery.  He later confessed to taking the cigarettes, but insisted that he did not use a knife.

2

Petitioner waived his right to a jury trial and requested a bench trial.  The trial judge initially denied the motion, but later granted the request for a bench trial.  After two days of testimony, the trial court found Petitioner guilty of armed robbery.  The trial court subsequently sentenced him as a fourth habitual offender to serve nine to thirty years imprisonment.

Following his conviction and sentencing, Petitioner pursued an appeal as of right with the Michigan Court of Appeals.  Appellate counsel filed an Anders[1] brief along with a motion to withdraw indicating that there were no issues for appeal.  Petitioner filed a pro per brief raising claims of judicial bias, judicial conflict of interest, improper sentencing enhancement, and ineffective assistance of trial counsel.  The Michigan Court of Appeals granted appellate counsel's motion to withdraw and affirmed Petitioner's conviction, stating that the appeal was "wholly frivolous." *People v. Boyd*, No. 281503 (Mich. Ct. App. June 13, 2008) (unpublished).  Petitioner then filed a motion for reconsideration raising his ineffective assistance of appellate counsel claim.  The Michigan Court of Appeals denied reconsideration. *People v. Boyd*, No. 281503 (Mich. Ct. App. July 16, 2008) (unpublished).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising all five claims, which was denied in a standard order. *People v. Boyd*, 482 Mich. 1067, 760 N.W.2d 464 (Nov. 25, 2008).

Petitioner thereafter filed his federal habeas petition, raising all five claims.  Respondent filed an answer to the petition contending that Petitioner had not properly exhausted his ineffective assistance of appellate counsel claim in the state courts.  Petitioner moved for a stay to allow for

---

[1]*See Anders v. California*, 386 U.S. 738 (1967) ("if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.").

proper exhaustion.  The Court found that Petitioner had not exhausted his ineffective assistance of appellate counsel claim in the state courts, but denied the motion to stay and dismissed the petition without prejudice.  Petitioner then re-filed his petition omitting the unexhausted claim and the Court re-opened this case.  Petitioner raises the following claims in his updated petition:

I.   He is entitled to reversal where the trial judge admitted that it did not make any sense whatsoever for him to ask the judge for a fair trial after he told the judge "Oh man you're crazy," in response to the judge's denial of a request for a bench trial.  Two weeks later, the admittedly biased judge held the very bench trial, of which he, himself, admitted that no reasonably sensible person could expect to be fair.

II.  He is entitled to reversal where he was denied the right to a fair judge when the judge was his trial lawyer in an unrelated case less than two years before presiding over the present case.  Trial counsel was ineffective for failing to discover this fact and request disqualification under MICH. CT. R. 2.003.

III. The trial court erred by enhancing his sentence with prior convictions rendered unconstitutional in light of *Halbert v. Michigan*, and defense counsel was ineffective for failing to object to the enhancement.

IV.  He is entitled to a reversal where trial counsel was ineffective in failing to impeach a key witness whose testimony was dramatically different from his police statement, and where she failed to utilize video evidence which had the potential to impeach the testimony of two witnesses who proved critical evidence against him.

Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

### III.  STANDARD OF REVIEW

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern a federal court's habeas review of a state court decision. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

4

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2241(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit

5

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *See*

6

*Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV. DISCUSSION

### A. Judicial Bias Claim

Petitioner first asserts that he is entitled to habeas relief because the state trial judge was biased against him, which deprived him of his constitutional right to a fair trial. Specifically, Petitioner points to verbal exchanges between himself and the trial judge and contends that the language used by the trial judge is evidence of judicial bias. The Michigan Court of Appeals denied relief on this claim finding it to be "wholly frivolous." That decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

At the settlement conference, Petitioner requested a bench trial, stating that he believed it was his right. The trial judge informed Petitioner that he had no right to a bench trial and that under Michigan law, a bench trial occurs only upon agreement of the defendant, the prosecution, and the court. Petitioner said that the judge was "crazy" and became very hostile to the court. (SC 19: 1-25)[2] The trial judge commented on Petitioner's outbursts:

Arguing with the Judge, somebody you're trying to convince to give you a fair trial

---

[2] "SC" refers to the transcript of the Settlement Conference on July 20, 2007.

> from the bench rather than have a jury. That doesn't make any sense whatsoever.
> Why is it you would want to say things to me to make me mad? And then ask me to
> have a trial and to be fair for you. That doesn't make any sense whatsoever.

(SC 20:15-20). The trial judge then went on to say that, although he was unwilling to consent to the

bench trial at that time, he would be willing to reconsider Petitioner's request in the future. The trial

judge concluded the dispute with Petitioner by saying:

> But I'm also saying that don't jump to conclusions if you want somebody to give you
> a fair trial. It's probably not in your best interest to do what you just done. I'm
> trying to be a fair as I can. I have you brought over. I hear these hearings. I'm
> trying to work with you. All I ask in return from you, not your cooperation but your
> respect for the process and the players involved in it. I'm trying to do everything I
> can to ensure that your rights are upheld.

(SC 21:12-21). The trial court subsequently granted Petitioner's request for a bench trial. There

were no more heated exchanges between Petitioner and the trial judge.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal

before a judge with no actual bias against the defendant or an interest in the outcome of the case.

*See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Judges must conduct trials "in an orderly way

with a view of eliciting the truth and to attaining justice between the parties." *Knapp v. Kinsey*, 232

F.2d 458, 466 (6th Cir. 1956). Judges have a "duty to see that the issues are not obscured and that

the testimony is not misunderstood." *Id*.

Judicial misconduct claims involve two types of cases. One group addresses charges of

"judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually

derived from some extrajudicial association with the cause or one of the parties. *See In re

Murchison*, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct"

in which the trial judge is accused of conducting the proceedings in a manner which exhibits a

"deep-seated favoritism or antagonism that would make fair judgment impossible." *See Liteky v.*

*United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002).

Adverse rulings themselves are not sufficient to establish bias or prejudice. *See Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *United States v. Hynes*, 467 F.3d 951, 960 (6th Cir. 2006) (citing *Liteky*). Similarly, judicial remarks that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases" and opinions formed by the judge based upon on current or prior proceedings do not provide a basis for a bias or partiality motion unless they display a "deep-seated favoritism or antagonism that would make judgment impossible." *Liteky*, 510 U.S. at 555.

"A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune. *Liteky*, 510 U.S. at 556. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias. *Id.* at 555-56. A constitutional violation occurs only when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment." *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008). In reviewing a judicial bias claim, a federal habeas court should presume that the trial judge properly discharged his or her official duties. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

In this case, Petitioner does not allege, nor does the record indicate, that the trial judge had any personal interest in the outcome of his criminal proceedings. Rather, Petitioner asserts that the trial court was biased against him. While the trial judge's comments reflect his dissatisfaction with Petitioner's conduct before the court, they do not establish an impermissible personal bias against

Petitioner. There is nothing in the record to suggest that Petitioner's outbursts played a part in the trial judge's findings, nor do the trial judge's remarks demonstrate a "deep-seated antagonism" toward Petitioner or the defense case.

Petitioner cites *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971), in support of his bias claim. In *Mayberry*, the Supreme Court considered the impartiality of a judge who was called a "dirty son of a bitch," a "dirty, tyrannical old dog," and a "stumbling dog," accused of "railroading" the defendant, and told to "go to hell." *Id.* at 457-459. The Supreme Court ruled that due process required that the name-calling defendant be tried before a different judge in his subsequent criminal contempt proceedings. *Id.* at 467. The Supreme Court did not admonish the judge for proceeding with the underlying trial. Thus, Petitioner's reliance upon *Mayberry* is misplaced.

In sum, while the trial judge's comments may have been inartful and this Court may have responded differently to Petitioner's conduct, it cannot be said that the trial judge was prejudiced or unable to decide the case in a fair manner. Petitioner has not shown that the trial judge was personally biased against him, engaged in misconduct, or otherwise deprived him of a fundamentally fair proceeding. Habeas relief is not warranted on this claim.

### B. Disqualification Claim

Petitioner next asserts that he is entitled to habeas relief because the trial judge should have disqualified himself under MICH. CT. R. § 2.003. The Michigan Court of Appeals found this claim to be "wholly frivolous." That decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Trial court errors in the application of state procedure or evidentiary law are thus not

cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the trial judge erred under the Michigan court rules thus fails to provide a basis for federal habeas relief. Moreover, state courts are the final arbiters of state law and this Court will not intervene in such decisions. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief is not warranted on this claim.

### C.  Sentencing Enhancement Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in sentencing him as a fourth habitual offender. Specifically, he allege that the trial court relied upon prior plea-based convictions where he was not provided counsel on direct appeal and claims that those convictions cannot be relied upon to enhance his sentence pursuant to *Halbert v. Michigan*, 545 U.S. 605 (2005) (ruling that due process and equal protection require the appointment of counsel for indigent defendants with plea-based convictions who seek first-tier appellate review). The Michigan Court of Appeals found this claim to be "wholly frivolous." That decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.

In *Halbert*, the Supreme Court ruled that "the Due Process and Equal Protection Clauses requires the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." *Id*. at 610. The United States Court of Appeals for the Sixth Circuit has since determined that *Halbert* does not apply retroactively to cases on collateral review. *See Simmons v. Kapture*, 516 F.3d 450, 451 (6th Cir. 2008). The record before this Court shows that Petitioner has six prior felony convictions (1984, 1992, 1993, 1995, 1996,

1997), *see* 2007 Michigan Department of Corrections Pre-sentence Investigation Report, Pet. Appx. A, which became final before *Halbert* was decided on June 23, 2005. Those convictions provide a sufficient basis for Petitioner's fourth habitual offender sentencing enhancement under Michigan law.[3] Consequently, Petitioner cannot rely upon *Halbert* to challenge those prior convictions and assert that his current habitual offender sentence is unconstitutional.

The fact that Petitioner has two additional prior felony convictions (2005), which became final after *Halbert* was decided, is of no consequence.[4] Any perceived error by the trial court in relying upon the 2005 convictions was harmless beyond a reasonable doubt. *See Ellis v. Barnhart*, No. 06-13772, 2009 WL 3064786, *13 (E.D. Mich. Sept. 21, 2009) (citing *Lindsey v. Smith*, 820 F.2d 1137, 1154 (11th Cir. 1987); *Barnes v. Estelle*, 518 F.2d 182, 183 (5th Cir. 1975)).[5] Petitioner has failed to establish that his fourth habitual offender sentencing enhancement is invalid or unconstitutional. Habeas relief is not warranted on this claim.

### C. Ineffective Assistance of Counsel Claims

Lastly, Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to seek disqualification of the trial judge under MICH. CT. R. § 2.003, for failing to object to the fourth habitual offender sentencing enhancement, and for failing to properly impeach prosecution witnesses at trial. The Michigan Court of Appeals found this claim to be

---

[3]The Notice of Enhancement, Pet. Appx. B, includes four of those same convictions.

[4]The Court notes that Petitioner has neither alleged nor established that he, in fact, attempted to appeal his 2005 convictions and/or sought the appointment of appellate counsel.

[5]The Court further notes that Petitioner's challenge to the two 2005 felony convictions under *Halbert* likely fails because the alleged lack of counsel on appeal does not invalidate those convictions for sentencing enhancement purposes. *See Walker v. Palmer*, No. 06-13050, 2008 WL 360824, *6 (E.D. Mich. Feb. 7, 2008) (adopting magistrate judge's report).

"wholly frivolous." That decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. A

habeas petitioner bears the burden of overcoming the presumption. *Id.* at 689. In fact, the Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 788.

### 1. Failing to Seek Disqualification of the Trial Judge

Petitioner first alleges that trial counsel was ineffective for failing to seek disqualification of the trial judge under MICH. CT. R. § 2.003. Under that court rule, a judge may not preside over a trial when he or she has represented one of the parties within the previous two years. MICH. CT. R. § 2.003(C)(1)(e).

Petitioner's claim that counsel was ineffective for failing to discover the facts and move to disqualify the trial judge lacks merit. As an initial matter, Petitioner has not shown that trial counsel was deficient. Petitioner asserts that had counsel looked at the Notice to Enhance, she would have seen that the trial judge had represented Petitioner in another criminal matter less than two years before trial. There are several problems with this argument. First, Petitioner relies upon his own Appendix E, which lists the trial judge as Petitioner's attorney on January 31, 2005. The judge's name, however, is handwritten on the paper, and the typed name of another attorney, William Schlee, is crossed out. William Schlee is also listed as Petitioner's attorney on another, unaltered

14

portion of the same document. Additionally, the Judgment of the Sentence in that case lists William Schlee as Petitioner's defense attorney of record. *See* Resp. Exh. A. Second, even if the Court were willing to accept that the trial judge represented Petitioner in his prior case, the record indicates that Petitioner was sentenced for that conviction on March 5, 2005. According to the Docket Entries submitted by Petitioner as Appendix G, the trial judge was not assigned to Petitioner's current case until March 12, 2007 – seven days past the two-year period. Thus, Petitioner has failed to establish that the trial judge should have been disqualified under the Michigan court rules. Trial counsel cannot be deemed deficient for failing to make a futile objection or motion. *See, e.g., United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000); *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996). Petitioner has not presented sufficient evidence to overcome the presumption that trial counsel acted in a professionally reasonable manner.

In addition, Petitioner has not shown that he was prejudiced by counsel's conduct in this regard. He offers nothing, other than his own conclusory statements, to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief, nor warrant an evidentiary hearing." *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). As noted, the record fails to demonstrate that the trial judge was actually biased against Petitioner. There is also nothing in the record to suggest that, had counsel disqualified the trial judge, the result at trial would have been different. The evidence of Petitioner's guilt of armed robbery was overwhelming. Petitioner has failed to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this claim.

15

## 2.  Failure to Object to Enhanced Sentencing

Petitioner also asserts that trial counsel was ineffective for failing to object to his fourth habitual offender enhancement.  As discussed *supra*, however, Petitioner has failed to establish that his sentencing enhancement was improper.  Trial counsel cannot be deemed deficient for failing to make a futile objection or motion.  *See Steverson*, 230 F.3d at 225; *McQueen*, 99 F.3d at 1328. Petitioner has failed to establish that trial counsel erred or that he was prejudiced by counsel's conduct as required by the *Strickland* standard.  Habeas relief is not warranted on this claim.

## 3.  Failing to Investigate and Impeach Witnesses

Lastly, Petitioner asserts that trial counsel was ineffective for failing to investigate and impeach prosecution witnesses.  Specifically, Petitioner claims that trial counsel failed to challenge the testimony of witness James Crump with a police officer's incident/investigation report and failed to admit a surveillance video from the store into evidence to challenge the testimony of store owner Walter Fish and store clerk Ronnie Krantz.

As to the impeachment of James Crump, Petitioner has not shown that trial counsel's performance was deficient.  The record indicates that counsel cross-examined Crump about what he observed on the day of the robbery and his ability to view the events at issue.  Trial counsel's decision not to use the police report for impeachment purposes can be viewed as a reasonable trail strategy.  First, the police officer's report, while not as detailed as Crump's trial testimony, did not contradict his testimony.  Second, the police report discussed Crump's on-scene identification of Petitioner as the perpetrator and contained Petitioner's own inculpatory statements about the crime. Counsel may have thus reasonably decided not to use the report in an effort to avoid emphasizing such matters before the trial court.

16

Additionally, Petitioner has not shown that he was prejudiced by counsel's efforts in questioning Crump. The testimony of Ronnie Krantz was sufficient to meet the elements of the crime charged. Trial counsel extensively cross-examined Krantz and attacked his credibility. Nonetheless, the trial court still accepted Krantz's testimony and, ultimately, found Petitioner guilty of the charged crime. Petitioner has not established that trial counsel erred and/or that he was prejudiced by counsel's conduct in questioning Crump.

As to Petitioner's claim that trial counsel erred in failing seek admission of the surveillance video, Petitioner has again failed to establish that trial counsel was ineffective. Petitioner has not submitted the video to support his claim, nor shown that any portions of the video would have benefitted his defense. The Court cannot provide habeas relief based upon speculation and conclusory allegations. Petitioner's conclusory statement that the video could have impeached Krantz or Fish is insufficient to warrant habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman*, 178 F.3d at 771 (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

The record indicates that trial counsel was well aware of the surveillance video and may have reasonably decided not offer it into evidence because it was inculpatory and/or not beneficial to the defense. Petitioner has failed to overcome the presumption that counsel's decision not to present the surveillance video was sound trial strategy which fell within the wide range of reasonable professional assistance. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an

17

ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Furthermore, based upon the record before the Court, it is improbable that, had counsel further attempted to impeach the credibility of the witnesses or introduced the surveillance video, the decision of the trial court would have been different. Petitioner has thus failed to establish that counsel was ineffective under *Strickland*. Habeas relief is not warranted on this claim.

## V. CONCLUSION

For the reasons stated, this Court concludes that the state courts' denial of relief on these claims is neither contrary to United States Supreme Court precedent nor an unreasonable application thereof. Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus. Given this determination, the Court also **DENIES** Petitioner's pending motions for judgment on the pleadings and summary judgment as moot.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473 484-485 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit

its examination to a threshold inquiry into the underlying merits.  *Id.* at 336-37.  The Court finds that

Petitioner has not made a substantial showing of the denial of a constitutional right as to his claims.

Accordingly, the Court **DENIES** a certificate of appealability.  The Court also **DENIES** leave to

proceed *in forma pauperis* on appeal as any appeal cannot be taken in good faith.  *See* Fed. R. App.

P. 24(a).  This case is closed.

> **IT IS SO ORDERED**.

> s/John Corbett O'Meara
> United States District Judge

Date:  November 4, 2011

> I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, November 4, 2011, using the ECF system and/or ordinary mail.

> s/William Barkholz
> Case Manager

19